## MASSEY *v.* HERMAN et al.

Where property was sold under execution, according to a plan made by the defendant, which proved to be defective ; and a number of the purchasers had a new plan made, which they adopted ; it was held, that this new plan did not bind the purchaser, who was not a party to it.

APPEAL from the Fifth District Court of New Orleans, *Buchanan, J. Roselius* and *Goold,* for the plaintiff.    *G. B. Duncan,* for defendants.
By the court :*

EUSTIS, C. J.    This suit involves the question of the ownership of a square of ground in the rear of the former suburb St. Mary, between Gravier and Common streets.    It was adjudged to belong to the plaintiff, and the defendants have taken this appeal.

The defendants are in possession.    There is nothing in the character of the possession, as claimed on either side, which affects materially the title.    The title to the property, as it is exhibited by the documentary evidence, is alone to be considered.    The defendants being in possession, the plaintiff's title must first be examined.

The statement of the facts given by the learned judge of the Fifth District Court of New Orleans, is offered as the basis of the argument of the counsel for the plaintiff; its correctness is, therefore, conceded by the plaintiff.

My impression was, from the first moment I cast my eyes upon the map, which is considered as establishing the location of the square in favor of the plaintiff's right, that it was conclusive against him on the statement of the facts on which he relies.    With the plans before us, scarcely any explanation would be necessary to prevent my view of the subject.    I may not be successful, how-ever, in putting it on paper without that assistance.

The square of ground claimed by the plaintiff, and in the possession of the defendants, is between Common street and Gravier street, and bounded by Adeline street on the east, or towards the river, and Jeanne street on the west. At the time the rights of these parties originated, it formed part of a large body of land in the rear of the suburb St. Mary, and was an unimproved marshy waste.    The titles of both parties originated in a sheriff's sale, made under an execution, against *John Gravier,* in 1825.    At this sale, *Howard*

---

* *Slidell, J.,* declined to sit in this case.

*Henderson*, under whom the plaintiff claims, purchased a square of ground under this description: a square of ground, containing fourteen lots, situated in the suburb St. Mary, and designated on a plan, made by *Gravier*, by number 9. At the same sale, *Lewis Herman*, the ancestor of the defendants, under whom they claim, purchased a square of ground, containing fourteen lots, situated in the suburb St. Mary, and designated on a plan, made by *John Gravier*, as number 5.

In this plan, square number 5 is described as bounded by Common, Gravier, Adeline, and Jeanne streets; number 9, as bounded by Common, Gravier, Adeline, and Magdalen streets; and number 9, is marked as situated to the east of number 5, and on the opposite side of Adeline street, which intervenes.

This plan, which is the commencement of title of both parties, it does not appear, ever was located; it existed on paper, merely having the sanction of *Gravier*, for the purpose of effecting the sale of the land in squares. It was handed by *Gravier* to the sheriff, previous to the sale, and deposited in the sheriff's office.

By the purchase, at sheriff's sale, it appears, that *Henderson's* square called for a location between Adeline street and Magdalen street, and *Herman's* square, for a location between the former and Jeanne street ; Adeline street intervening between the two squares, and each having a part on it.

There was no location under the plan of *Gravier*, and, it is contended by the plaintiff's counsel, that there could have been none. Be it so ; although I concur with my brother Preston, in thinking that, as far as the location of the part of these squares is concerned, the possibility of the location, under that plan, is a matter of absolute demonstration.

When the purchasers of the squares on Common street attempted to take possession, they discovered that *Gravier* had made a mistake, and that one of the squares, nearer the river, had been already sold to *Mr. Frerel*, and, consequently, the purchaser, *Bates*, had no right whatever to any of the land sold, he having bid for what was the property of *Mr. Freret*, and not of *Gravier*, the debtor in execution. *Bringier's* plan was then made. A square was added, in the rear, to the lots on Common street, and, for the purpose of letting in *Bates*, and giving him a square, the purchasers in the rear of it, were each crowded back one square. Under this arrangement and location, the purchaser of the square between Adeline and Magdalen streets, seeks to oust the purchaser of the square between Adeline and Jeanne street.

This plan of *Bringier* was afterwards ratified by the heirs of *Gravier*, and has been recognized by the municipal authority, and the defendant is in possession of the square between Adeline street and Jeanne, as designated in that plan.

The numbers of the lots on this plan are changed ; that in the possession of the defendants being numbered 9, and bearing the name of *Henderson* marked upon it, while the number and name of the defendant's are transferred to the square on the other side of Jeanne street.

It is very clear, that this change in the number and name amounts to nothing. The plan, so far as the heirs of *Gravier* were concerned, was one of location exclusively, and not of ownership. It purported nothing else ; indeed, they had no right to determine, in the slightest degree, any matter of right touching the ownership, among the general purchasers, at the sheriff's sale. When it is con-

sidered that the defendant's ancestor never was a party to this plan of *Bringeir*, or the arrangements in virtue of which it was made, he cannot be held bound by it, as affecting his rights acquired under the sheriff's sale. Let him be held to it as a location, and it gives to him the square, which he has got under the description of location, which his title called for.

But, to return to the plaintiff's title. If we give the plaintiff the square in dispute, the location defeats the calls of his title. He is not then bounded by Magdalen street, on the side next the river, but by Adeline street, and is not bounded on the other side by Adeline street, but by Jeanne street. The defendants, too, who hold the square, with the servitudes of way, of light, and of drain, on Adeline and Jeanne streets, according to the calls of their title, are transferred to another square, which they repudiate, and some one else owns.

The parties in this business have undertaken to make room for a purchaser who never had any title, by displacing the several purchasers of the squares on Common street. I have not been able to discover any act of the defendants, or their ancestor, which binds them to this arrangement, and, consequently, I think the plaintiff cannot recover.

The judgment of the district court is therefore reversed, and judgment rendered for defendants, with costs in both courts.

Rost, J. I concur in this opinion.

Preston, J., dissenting. In 1825, many executions were issued against *Jean Gravier*. He had made a plan of that portion of the suburb St. Mary, bounded by St. Paul, Common, Bolivar and Hevia streets. He divided it, by the plans, into thirty-two squares, which the sheriff seized and sold, in January, 1825, according to the plan.

There were eight squares fronting upon Common street, numbers 29, 25, 21, 17, 13, 9, 5 and 1. The numbers 29 and 25 were reserved from the sale, as having been previously sold; number 21 was adjudicated to *Mr. Bates*, but had also been previously sold, to *Mr. Freret*, so that the purchaser acquired no title. The other five squares on Common street, were respectively adjudicated to *Licquet, Caillon, Henderson, Herman,* and *Goodman.* Bates could not obtain possession; and, in consequence of it, and other supposed inaccuracies of *Gravier's* plan, which exhibited no scale or measure of the streets and squares, an entirely new plan was made by *Louis Bringier*, Surveyor General of the State, and adopted by most of the purchasers at the sheriff's sale, by a notarial act, dated the 14th of July, 1831. By it, another square was added to those fronting on Common street, from the vacant ground of Gravier in the rear; and *Bates*, who had purchased nothing, was allowed the square adjudicated to *Licquet;* and so successively, *Caillon, Henderson, Herman,* and *Goodman*, were assigned the successive squares in the rear of those purchased by them. Most of the purchasers signed this act, and are, therefore, bound by it. Their locations *inter se*, are not only binding upon them by the agreement, but are probably entirely quieted by prescription.

But *Herman* never signed this act, and, of course, is not bound by it. His widow and heirs are entitled to their location, according to *Gravier's* plan, if it can be found, and there be no just reason to prevent their obtaining it. A plan should be a picture of the ground, and those who purchase by a plan, should have the ground it depicts, if possible.

The district court has made a most clear and exact statement of the material facts which the record presents, and have come to the conclusion, that it was not possible to locate these purchasers according to *Gravier's* plan, and, therefore, compels the widow and heirs of *Herman* to submit to *Bringier's* plan and

location, although not parties to it. He presents so strong a case of equity, on behalf of the plaintiff, after an elaborate examination of all the circumstances, out of which *Bringier's* surveys and plan were adopted, not only by the purchasers, from the sheriff, of *Gravier's* property, but by the city, that I regret the defendants have not yielded to his conclusions, especially as there cannot be much difference between the value of their square and the one assigned them by the plan immediately in the rear. They insist, however, that their square can be located by *Gravier's* plan, and will submit to no other location.

I am forced, by the evidence, to decide, that they can be located by that plan, and, to yield to their demand, except so far as the streets laid out by *Bringier*, especially St. Jean street, may encroach on their location. These were adopted by the city ; were publicly opened, without opposition, on behalf of the defendants; have been used for twenty years, and cannot now be disturbed. The fact, that *Bringier* opened the four streets, in front of the defendants, fifty feet wide, while, by *Gravier's* plan, they were not more than forty, if so much. Also, a different location of St. Adeline street, and other changes of the plan, will probably deprive the defendants of a front on that street, because their front may be located more than a hundred feet in the rear of its present site. If this should be the result, they must submit; for the city alone had the right to open, make, and keep in repair the streets, and were not bound by *Gravier's* location of St. Adeline street. Besides, their defence is a hard one ; and they cannot maintain title to ground which their location, according to *Gravier's* plan, by which they purchased, does not call for, except by naming a street which did not exist, and which was afterwards located elsewhere.

The titles, plans, and evidence, fully prove, that St. Paul street was well known and established on the ground, at the early day at which the sheriff's sales were made, and that this street, also square 29, and Gironde street, as to their front on Common street, corresponds on *Bringier's* plan exactly with *Gravier's* plan, so that the corner of Hospital and Common street corresponds on the two plans and on the ground.

Now, the plan of *Gravier* shows five squares and five streets fronting on Common street, between that corner and the square adjudicated by the sheriff to *Dr. Herman*, according to that plan. The squares have each five lots, fronting on Common street. It is well known, and sufficiently proved, by the titles, plans, and evidence, as specially stated in *Gravier's* sale to *Freret*, and the exchange of the latter with the Charity Hospital, that the lots were each sixty French feet in width. *Gravier's* streets averaged forty French feet in width. So, that, using these data, we find, with certainty, that the corner of *Herman's* square and Common street, on the river side, should be fixed at seventeen hundred French feet, from the corner of the Hospital square and Common street, on the river side.

The city surveyor should, therefore, locate the defendants corner on Common street, on the river side, at the point this calculation gives.

They are entitled, by *Gravier's* plan, to two hundred and forty French feet on Common street, running to the rear from the point just established, by four hundred and twenty French feet in depth.

This location will probably remove the defendants upwards of one hundred feet in the rear of their present front on St. Adeline street. If so, the plaintiff is entitled to this point, with all the ground between that street and the defendants' location ; no street can be opened immediately in front of the defendants

location, without the authority of the city. They will be indemnified however, probably by having two fronts on St. Jean street.

Equity obliges me to declare also, that the plaintiff will be entitled to the defendants' rights, under the act of the 14th July, 1831, and plan of *Bringier*, and, by virtue of those rights, to locate the remainder of his quantity on the ground immediately in the rear of the two hundred and forty French feet fronting on Common street, belonging to the defendants, including in that, two hundred and forty feet on St. Jean street, which has been opened by the city, without opposition from the defendants.

There probably was some difference between the courses of the side lines on *Gravier's* and *Bringier's* plans. It is so imperfectly proved, that it cannot be considered.

I think the judgment of the district court should be reversed, and the cause remanded, with directions to the district court to cause the defendants to be located and quieted in their possessions, according to the opinions herein expressed, at the distance of fourteen hundred French feet on Common street, in the rear of the corner of that and Gironde street; and that the plaintiff should be condemned to pay the costs of the appeal.

An application for a re-hearing was refused.